The next case on the calendar is Chandler v. State of Vermont. William Miscelli v. Petitioner Charles Chandler Good morning, Your Honors. My name is William Miscelli. I'm representing Petitioner Charles Chandler. May it please the Court, Petitioner Chandler raised the issue of bias and was entitled to establish adhering how that bias led to or indeed by itself constituted substantial or substandard representation and, if necessary, prejudice. He was also entitled to testify to that and also to examine the trial attorney and to explore that further. The Superior Court cut that off with an unreasonable application of established federal law, grafting in a requirement for expert testimony when under federal law no such requirement exists. I understand that this Court has been considering the viability of the Lackawanna second exception, the principle of that exception, and I would urge the Court today to embrace that exception in the context of this case. It's an exception. It's a principle that is based upon justice, where a person who, through no fault of his own, was prevented for one reason or another of presenting his substantial federal constitutional claim and have it decided on the merits. And we suggest that that's exactly what happened in this case. Correct me if I'm misunderstanding, but the Lackawanna exception, the discussion in Lackawanna, is about identifying circumstances in which a petitioner should be able to challenge a prior conviction that's adversely affecting a present sentence. Your situation is different, right? Your client is not in custody on another. He's not trying to challenge an earlier sentence because it will result in him being in jail longer on a present one. Yes, that's correct, Your Honor, and the principle has been discussed in that context of prior sentences, but there's nothing in the actual discussions that limit it. But what are the collateral consequences that are significant enough so that we should say that habeas lies? I mean, habeas is a very powerful but limited remedy, and we have not applied it unless there are collateral consequences. So what are the ones that you tell us are there? Well, the collateral consequences, it's a long list, and none of which by themselves have ever been found by the courts to constitute custody, although we're urging the court to do that in this case, especially considering his lack of his ability to see his family and his lack of employment opportunities, firearms, et cetera, et cetera. But I think what we're really arguing here is the Lackawanna principle, and in terms of the question that was just asked, in the case of Brooms v. Ashcroft, 358 Fed 3rd, 1251 at 1254, that's where the Tenth Circuit has accepted the Lackawanna exception, and it's not in the context of a prior sentence, it's in the context of an immigration case. So I don't think that there's really a reason to, although it's come up in the type of cases, I don't think there's a reason to keep it there. I think it's a principle that's broad that really is available to any citizen who has been prevented for one reason or another of presenting his claim. The claim here really is a per se prejudice, a per se prejudice that there's a conflict of interest, and this goes along with this court's jurisprudence in Tippins v. Walker, citing to Strickland and Cronick, that there are cases where the situation between the attorney and the client is so extreme that it does not make sense to go through the record. Could he have brought habeas when he was still in prison on this ground of inadequacy of counsel? And then, even though he was subsequently released, if he had brought it at that point, it would stand, wouldn't it? Yes, it would, Your Honor. So he could have raised the issue. You say he had no chance to. He had basically done half of a sentence or roughly half of a sentence of 28 days before he even filed his first one, which was then he was denied a stay of execution. So he had basically. . . Yeah, he didn't have very much time. No. This is a very small sentence. Yes. Understandably, given what the underlying issue was. Yes, certainly within the realm of possibility that it could have been filed within the time frame. But practically speaking, it was impossible in this case, or it was virtually impossible. But, you know, the consequences of our holding that one can bring habeas after a person is no longer in jail because of a series of possible things that may or may not happen would be really quite extraordinary in terms of expanding the number of cases that are brought and so on. So that, you know, one might want to do it, but one might want to have a case where really these consequences look as if they're significant. Well, Your Honor, I know as I mentioned in the Califf case versus Capra, this Court has been wrestling with this issue and has cited to three circuits that have adopted this principle. And I'm urging this Court to adopt it as well. I think that what you've got here is somebody that had legitimate constitutional claims that as a pro se litigant, he was basically afforded no consideration whatsoever as a basis of not listing an expert on a witness list. The case was dismissed on summary judgment. He was never able to develop the constitutional ineffective assistance of counsel that exists in this case. And I suggest that just the conflict itself, just the lawyer saying that he wants his client to go to jail and he wants to F him, excuse the language, this is before trial. This creates a conflict that we were talking about like in Tippins where it says, in such instances where counsel is burdened by a conflict of interest, where counsel has breached the duty of loyalty, it is difficult to measure the precise effect on defense of such a conflict. And I'm suggesting that that's what existed in this case and that this conflict alone is substandard representation. I think that you look at this record, you can see substandard representation everywhere. He's impeaching his own witness. He's allowing, he's welcoming in prior convictions of his witness that were clearly inadmissible. He's admonishing his own clients. He's arguing to keep a juror on the case who's already stated that she's prejudiced in favor of a state witness. This all goes to the merits of the argument if there is, if habeas still lies. And, you know, that's fine, but that isn't the issue before us. The issue before us is whether habeas lies when somebody is out of jail after having been there for a misdemeanor of this sort. And I certainly agree with Your Honor that this is not the most significant case or the most flagrant case where you would say, okay, now we're going to embrace Lackawanna. But if it's ever going to be embraced, it's going to cover more than the most significant and outrageous cases. It's going to cover a case like Mr. Chandler's. And I would say that this is a case that is worthy of that consideration. Okay. Did you say, did I understand correctly, did you say in your prior exchange with Judge Calabresi that he would have been permitted to lodge his habeas complaint in the federal court before his exhaustion of the state remedy was complete? That he would have been able to plead it, file it so that it's filed but not pursue it until the state remedy was exhausted? Well, I was just grappling with that question. I was trying to do the math in my head of what his exact circumstances were. But I think that it's possible that he could have filed something in the federal court rather than continuing to pursue it in the state court. But as a practical— He may not have been able to. He may not have been. Correct. Thank you very much, Your Honors. Good morning, Your Honors. May it please the court. My name is Ben Battles and I represent the state of Vermont and the Vermont Attorney General in this appeal. The decision below should be affirmed for two reasons. First, there is no jurisdiction under the habeas statute because Mr. Chandler was not in custody when he filed his petition. And second, if the court does reach the merits of his constitutional claim, the court should nonetheless affirm because that claim was decided by the Vermont Supreme Court and that that decision was not objectively unreasonable. Turning first to the jurisdictional argument, the habeas statute is clear that relief may only be granted to a prisoner who is in state custody under violation of federal law. And that is so even if he could not have brought habeas when he was there? That's my understanding. And given the nature of his sentence, it did, I think, especially with respect to the ineffective assistance claim, you know, he was—there was litigation that went up to the Vermont Supreme Court several times with respect to that, and he ultimately was able to file that under state law while he was in custody, and then it was decided after he was released and the court held it was not moot. And I'll quickly discuss the Lackawanna case on which petitioner relies. That case is inopposite for—the primary reason is if you look at the Supreme Court's decision in that case, Part 2A of the discussion specifically addresses the custody requirement and finds that Mr. Koss, who was the petitioner in that case, was in custody under an enhanced sentence, and therefore he satisfied the jurisdictional requirement. And then it went on in Part 3 of the decision to talk about whether he was able to attack his original sentence, you know, sort of as a matter of law, and that's the exception—the discussion there is— Just as a matter of procedure, can somebody file a federal habeas before the state is exhausted, claim is exhausted, and then ask that the federal habeas claim be stayed until exhaustion has taken place? I don't know the answer to that, Your Honor. I haven't come across that situation. But the fact remains that habeas is, as Your Honor mentioned, a powerful but limited remedy, and the statute is very clear that it requires custody, and although that has been expanded somewhat to mean more than physical incarceration, it does not reach the situation at issue here. The Lackawanna exception is inopposite for the reasons I just described, and it's specifically directed to someone who is challenging an enhanced sentence on the basis of an underlying conviction, which is not the issue here. And I'll turn to the collateral consequences as well. Mr. Chandler identifies a number of restrictions that he says he faces, loss of professional license, travel, business opportunities, ability to possess a firearm, but all of these are ordinary consequences of a felony conviction. And I'd refer the Court to Magistrate Judge Conroy's report and recommendation in this case where he walked through all of these and noted that he made two points. One, that these are speculative. Counsel admitted an oral argument that Petitioner has not actually lost any license so far and that the business opportunities were speculative, and he had not made a clear indication about his travel plans other than that he has family in Canada that he would like to visit. And second, and I think more important- Is there anything in the record that suggests that somebody who has this kind of conviction will not be able to travel to Canada? I mean, that's a serious consequence if it is there. So is it that it's not a consequence, or is it that it is speculative, not in the sense that he may or may not want to go to Canada? He has family there, that's enough. But that Canada does not allow people like that to go. That's it. And I came into this case relatively late, so I'm not familiar with everything that was filed below, but my understanding was that it was his statements that were his allegations, and the complaint was not citations to specific provision of Canadian law. But even though that is a significant restriction, that is a restriction imposed by a non-party sovereign to this case. Yeah, but that whole issue is one in which there are some courts that have said that we have not, and I'm not at all that comfortable with the notion that because some other country, you know, that that is not something that we should hold. Don't go down that line, that's a difficult one. I do not think we need to go down that line in this case, given the nature of the allegations. But what is alleged is the ordinary consequences of a criminal conviction, and this court has held in other contexts that if it's not physical incarceration, that it needs to be some sort of severe restraint on liberty, where the individual is subject to continuing supervision of a court, where their liberty is potentially going to be revoked, as the Nowitzowski decision. Opposing counsel also relies on this court's Poudry decision, which involves a habeas petition filed from tribal authorities, and it was this particular group of petitioners was going to be banished from the tribe, and I think that decision was tailored very specifically to the nature of that remedy, and that these individuals were going to be forcefully removed from their lands and forced out, and the court found in that case that that was a severe restraint on liberty, and the court has since declined to extend that. And even if this court does decide to reach the merits, which as described, I don't think there's any basis to, but the Vermont Supreme Court did specifically address Mr. Chandler's ineffective assistance claim and underwent a Strickland analysis and decided and rejected that claim on the merits. As this court recently explained in its Waiters v. Griffin decision, that a habeas review of a Strickland analysis can only be upset if the state court's analysis was objectively unreasonable, and here it was not. The court, the Superior Court in the first instance looking at his ineffective assistance claim, found that he had, that it was not clear that the parties disputed specific things that had happened during the case and why that was, why or why it was not deficient performance, and it found in that context that it needed expert testimony to sort of wade deeper into these issues, and the court on appeal, the Vermont Supreme Court, looked at that, accepted that conclusion, and also walked through the record and the different strategies that were presented and found that Petitioner had failed to explain how counsel's representation was unreasonable and how he was prejudiced by the specific instances that he described. And with respect to the pretrial phone call, the court made clear that that was an outrageous message that was left, but also went on to explain reasonably how that was outside of the courtroom, that was one instance, and Mr. Chandler had failed to describe how that related to the other events that happened during the trial. And if there are no further questions, we'll ask that the decision below be affirmed. First, if I could, to go back to the question about whether he could have filed in federal court, the answer is no, he could not have because he had done half his sentence before he had a stay pending appeal. After his appeal was denied, he filed the petition for post-conviction review, but his stay of execution was denied. So, ironically, it's because the court that dismissed his case without a hearing also denied him a stay of execution that he never had his day in court. The state argues today and on page 17 of their brief citing the decision by the magistrate judge about the Supreme Court, Vermont Supreme Court ruling on the merits, they didn't get to really any of the merits. The key point in this case is the superior court dismissing the case. Even in the quote from the Vermont Supreme Court that's on page 17, it says, Mr. Chandler failed to explain. Mr. Chandler did not even try to explain. There's no record. He was denied a hearing for ineffective assistance of counsel when he had an attorney who behaved outrageously. They were enemies when they went into court. The trial record is a travesty. It's horrible. The performance is terrible. And he's never had a chance to get into court to address it because it was dismissed because he didn't have an expert, which is not standard under federal law. So I'm suggesting to this court that though it's not the most important case that has come across your bench, it's a significant case, and the Lackawanna exception number two is right here. Thank you very much. Thank you both. We'll take the matter under advisement. It's the last case on the calendar for this morning, so I'll ask the clerk to adjourn.